Good morning. Today's first argument is 2019-40498, United States v. John D. Leontaritis. Mr. Raynal, you may proceed with your argument. Good morning, Your Honors, and may it please the Court. Federico Raynal appearing on behalf of Appellant John D. Leontaritis. In this testimony and deliberating for a day, the jury returned a general verdict of guilty and answered a special interrogatory requesting that they determine beyond a reasonable doubt the amount of methamphetamine attributable to Mr. Leontaritis. They answered that question beyond a reasonable doubt less than 50 grams. Several months later, at sentencing, Judge Crone jettisoned the jury's affirmative finding of fact as to drug amount and supplanted it with her own, finding Mr. Leontaritis attributable for 175,000 grams of methamphetamine, more than 3,500 times more than what the jury had found. Just last term in United States v. Haymond, the United States Supreme Court reemphasized that juries exercise a supervisory authority over the judicial function by limiting a judge's power to punish. This court as well has recognized that a jury's answer to a special interrogatory when posed is binding. In United States v. Gonzalez, a case decided in 2016, Judge Costa wrote that although the law may be murky concerning when it is proper to give the jury special interrogatories, it is not when it comes to the effect of those interrogatories when answered. They are binding upon the court. And in the case of Gonzalez, incidentally, Your Honor, the fact that they were binding on the court vacated the murder convictions of several of the defendants. Counsel, is this case different from the circuits that have held that you could be because of the precision of the special interrogatory? Do any of those other circuits have the type of detailed special interrogatory? I know the Ninth Circuits is different than this one, but do any of the circuits have a similar language issue but found against your position? Not that I've been able to find, Your Honor. The other cases have all involved a failure to find. So following the U.S. Supreme Court's decision in Watts, there is a distinction made between an affirmative finding and a failure to find. And these other circuits that have looked at this issue, they've all, it's all involved a jury instruction where the jury is asked, do you find the defendant guilty? And then, you know, they render a verdict. We find the defendant guilty of, you know, beyond a reasonable doubt, guilty of possession of less than 50 grams, possession of more than 50 grams. But it's never the circumstance that we have here where the jury is affirmatively finding, beyond a reasonable doubt, that the amount in question is less than than 50 grams. But isn't your rating of the jury verdict putting the burden of proof on your client? I'm, in terms of what the drug amount should be? Yeah, because to me, reading it plain English, the beyond a reasonable doubt is you have to find beyond a reasonable doubt that he had this much. That's putting the burden on the government. But your rating of it is they found beyond a reasonable doubt what he had. And if that's so, then the burden's on him too. I mean, it would seem like you're moving the burden of proof. I don't think that's the case, Your Honor, because the jury was given the option of finding no quantity at all. So the jury, when answering the question, and the question reads, indicate below your unanimous finding beyond a reasonable doubt of the quantity of methamphetamine, if any, attributable to the defendant. Right, so they have to find beyond a reasonable doubt that he had, you know, 500 or 50 or this or that. That's putting the burden on the government. But that doesn't mean they would have found the same thing if it was find beyond a preponderance of the evidence what he had. And so that is exactly similar to finding somebody guilty or not, you know, finding somebody not guilty, but then in sentencing, finding by a preponderance of the evidence. I just don't understand how this differs from that, because the burden is on the government to prove beyond a reasonable doubt X. And if they fail to do that, that doesn't prevent them from doing that by preponderance of the evidence in sentencing. I just don't even understand how you can say to the contrary. Your Honor, you're absolutely right. Generally, we have general verdicts in criminal cases, and this court and Gonzales went to great lengths to explain why general verdicts are a good idea and special interrogatories aren't. The issue here is what happens once the special interrogatory has been given and the government jointly proposed these instructions and this verdict form. So it's not a case where this was somehow, you know, snuck in by the defendant. This was a jointly proposed verdict form. Moreover, had there been a preponderance of the evidence standard, maybe the jury would have answered the question differently. So as I read this question, it says, If you can make a determination beyond a reasonable doubt as to the drugs involved, make it here. If you can't, then don't. And had they the question been by preponderance of the evidence, the jury might have answered it differently. The fact that they answered it with the highest degree of certainty that our law allows is what prevents it from later being to prove beyond a reasonable doubt. And so having done so, that does not mean they can't later, to the judge, prove by preponderance of the evidence something more. I just think, how would you word this otherwise? How would you word this to put the burden on the government other than how it was worded? It came below your unanimous finding beyond a reasonable doubt of the quantity. How would you word it to put the burden on the government? If your honor would look at the Pinheiro case, which was also decided by this court, you have a jury instruction that exactly charts that. And it basically, what it says in Pinheiro is that the jury has to find the person guilty of a certain amount. So rather than asking the jury to render its own judgment on the amount in question of a reasonable doubt, it asks the jury to decide whether the government has met its burden of proof. The question that we had in does not ask the jury to pass on whether the government has met its burden of proof. Rather, it asked the jury to substitute its own judgment, to make its own finding as to the amount of drugs that were involved in the case. So as you see this, it's not that the government proved that he only had less than 50 grams. It's that he only had less than 50 grams as a factual matter. And that's the question that was answered. Absolutely, your honor. I think a plain reading of the four corners of the verdict form, that's the only possible conclusion. They made a particularized factual finding. They didn't, they weren't determining it based upon whether the government successfully proved something or not. They were on their own making a determination. Is that right? That is absolutely right. And if your honor looks at the verdict of the jury itself, on page one, when they answer the general question, right? It says, as to the offense charge and count one of the indictment conspiracy to possess with intent to distribute or distribute a mixture of substance containing a detectable amount of methamphetamine, we the jury find him guilty. And then compare that question with the question that's asked on the following page that says you must next determine the quantity of methamphetamine for which the defendant was accountable. Not, I'm sorry, your honor. So, so, so if somebody were to phrase this case as we're trying to decide if acquitted conduct can be considered, that's not your argument here today. Not at all, your honor. That argument is foreclosed by Watts. Watts, in fact, in Watts itself, the Supreme Court said without specific jury findings, no one can logically or realistically draw any factual findings or influence from a general case. We have affirmative findings of fact. So in Watts, you know, what happened in that case, it was a narcotics case where there was a 924 C possession of a firearm charge as well. So drug trafficking plus a gun. The jury found the defendant not guilty of possessing the gun, but guilty of narcotics trafficking at sentencing. The judge enhanced the sentence by two points to account for having a gun. The Supreme Court reasoned, hey, you know, they didn't find the defendant innocent. They found the defendant not guilty. They found the government hadn't met its burden of proof as to 924 C. So the judge could come behind the jury and by contrast, in Mr Leon to write us his case, the jury did make an affirmative finding that it was less than 50 grand 50 grams and that forecloses the other alternatives. As we pointed out in our brief, you know, if a jury makes a beyond a reasonable doubt determination, if I asked, you know, determined beyond a reasonable doubt the weight of this brief less than a pound, more than a pound or more than 10 pounds. And the jury answers that question beyond a reasonable doubt, it is less than one pound that forecloses the possibility of the other two alternatives. And that's not the government failed to prove that it was 10 pounds. That's not the that's not the question. That's correct. Okay, did you want to fully open with your other argument or it's your time? But I want to I understand your honor. We if I wanted to take some time to distinguish Watson Pinero. I think that unless your honors have any questions about Watson Pinero, Pinero is a Fifth Circuit case. I would encourage your honors to examine Pinero carefully because Pinero sets up the juxtaposition to the case we have now because in Pinero, you have the exact verdict form that Judge Haynes was referring to. So let's talk about the effect this has on sentencing as your honor Judge Elrod found in United States versus Haynes in our circuit for the last 30 years, sentencing has been based on a particularized determination of the amount of that are attributable to the defendant and that is drawn from outline and from Apprendi. That language is mirrored in the United States sentencing guidelines, which also talk about reasonably foreseeable drug quantities. In this case, what the jury's verdict did was exclude from the judge's consideration amounts that weren't included in that special finding. So the correctly calculated range would have in fact been a 22 rather than a 38. So we have to send if you win, we have to send it back for a re-sentencing. That's correct, your honor. We would ask that the case be remanded with instructions that Mr. Leontoritis be re-sentenced in accordance with the jury's affirmative finding that the amount involved was less than 50 grams. And I'm not foreshadowing, that was just a assuming arguendo. And it's your position that we would not be creating a circuit split because of the unique nature of the question, is that correct? That's correct and if your honor looks at Judge Kaczynski's opinion in Pimentel-Lopez out of the Ninth Circuit, they have a similar jury verdict in the sense that it also asks for a particularized determination by the jury as to the amount in question and contrast that with the First Circuit of the Third Circuit, which has a more generalized question. But isn't this one stronger even than the Ninth Circuit's? It is, it is because it mirrors exactly the language from the sentencing guidelines. So it's not the Ninth Circuit dissenters complain, but some of those complaints are not here. That's absolutely right, your honor. That's absolutely right. And I would stress again that if the government is not happy with this verdict form, they could change it. But the way it is worded right now, it asks the jury from an affirmative finding which was made. So why would they not be happy with that? I mean, it's clear. I mean, if it's a clear thing, it gets the exact thing that you're trying to go for. Oh, we're happy with the verdict form. I'm simply saying that this is a problem that arises solely because of the language that's contained inside the verdict form. You're saying the government might want to have ambiguity in the answer. Certainly, they want to have a larger stake at sentencing. Okay. You've used your time. Thank you very much, your honor. Mr. Ostroker, you may proceed. May it please the court. Just to pick up where Judge Haynes was asking the question about effectively shifting the burden to the defendant. I mean, I think that's actually correct. I mean, the crucial thing in our view in this case is reading the verdict form together with the instructions. The jury wasn't asked to do something just in a vacuum and just write answers down on a verdict form. What it was asked, and you'll see this at page 262 of the record, they were asked to hold the government to its burden of proof. So the district court told the jury at page 262, the government has the burden of proof in this case beyond a reasonable doubt. And if it fails, you must acquit. And then at page 274 of the record, the district court instructed the jury that one of the elements of the offense was that a particular amount of drugs was attributable, a particular amount of methamphetamine was attributable to defendant Leontoritis. So we think when you put those two things together, the verdict form can only be understood as a judgment about the government's proof. And that's what Mr. Raynald and Mr. Leontoritis says in his reply brief is this is not the verdict form is not a judgment about the quality of the government's proof. That's what every verdict is. And that's what this verdict form is. It's a special interrogatory. It's to ask the jury a specific factual question. This is not to decide guilt or innocence. This is a specifically tailored special interrogatory, isn't it? It is exactly to get a factual answer from the jury. And the factual answer is because there's statutory minimums. Can you answer my question? And then you can answer Judge Haynes's question, please. And I actually think they're both related. I think that's your honor, Judge Elrod. You're correct in our view that it is a special interrogatory aimed for a specific purpose. And purpose is exactly what Judge Haynes said, which is to get at statutory amounts. So these amounts, 500 grams, 50 grams, less than 50 grams, those are keyed to the 841 quantities. They're not key to any guidelines numbers. The guidelines ranges would fall all over the place within these various categories. So the clear thrust of this verdict form is to statutory amounts. And you have a So these statutory minimums rest on your burden of proof, of proving beyond a reasonable doubt, X. So it's not just a random question, you know, what color jacket was Mr. Leon Notardis wearing, okay? It's a question that directly relates to something you have a beyond a reasonable doubt burden on, right? Precisely. I'm sorry, I didn't mean to interrupt. I was going to say precisely, in the verdict form itself says that the verdict form says indicate below your unanimous finding beyond a reasonable doubt. So two crucial things there, unanimity and beyond a reasonable doubt. Now, the district court was asked an entirely different question about what's your view of drug quantity by a preponderance of the evidence. These are just two different universes. So there can't be any contradiction. And even if there could be, then the contradiction, the case law is okay, because it's something that the district court is resolving a totally different issue. Okay. Mr. Reynold is suggesting that there's really no case law supporting your view here. Can you please address that? Well, I think the first, second, third, eighth, seventh, and 10th circuits, I think have all spoken to it. I mean, it may not have been teed up in the same, the same kind of detail as it is here. But the reason why was because no court thought until the ninth circuit in 2017, that there was any kind of affirmative finding in a verdict form like this one. This verdict form, though not exactly like verdict forms before it is very, very similar. And what I think Mr. Reynold focuses on, and understandably so, the words less than have, in his view, it pins the government to less than a particular amount for purposes of that's not correct. Especially because the verdict form in this circuit, I believe it's 2.95a is the pattern instruction on drug quantities. There's a verdict form there that uses the words less than. I don't think anyone has thought until the ninth circuit that there was any kind of preclusive effect of that for sentencing purposes. And of course, as Mr. Reynold acknowledged, Watts speaks pretty directly to this issue of beyond a reasonable doubt finding by the jury. So, and we would flat out acknowledge in this case, there's, of course, the jury acquitted Mr. Leontoritis of amounts of 50 grams and above. We are not able to get the statutory benefit of any amount above that. And for whatever reason, it's not obvious to us what the jury was thinking on that. But so be it. At sentencing, it's an entirely different inquiry. And there are actually- Can you answer whether, okay, you mentioned the first, second, third, seventh, eighth, and tenth circuits. Do any of those circuits have a verdict form similar, a special interrogatory similar to this one? I believe that the Webb case from the eighth circuit, and I believe the Flores case from the second circuit, as I recall the factual recitation in those cases, they were worded very similarly in the sense of less than. And again, I think that's where Mr. Leontoritis is getting hung up. I mean, I think that's where he's putting, you know, kind of putting all of his eggs in that basket. Those courts didn't think anything of that language. It just means that the jury found beyond a reasonable doubt that the government couldn't go more than. And I think Judge Graber's dissent in Pimentel-Lopez is really forceful on that point. Because in that case, again, in Pimentel-Lopez, it was a verdict form that said less than. The majority really hinged on that. The dissent said, well, but that doesn't mean not to exceed certain amounts by a preponderance of the evidence. But you're totally free to go either way on this issue, right? I think Pinheiro, well, Pinheiro didn't involve exactly this issue because the defendant there didn't make the same argument that Mr. Reynolds was making. I would acknowledge that the Pinheiro case is very close to this case. And I think it points directly to the conclusion we want the court to reach. But the argument there wasn't quite the Pimentel-Lopez argument of this affirmative finding notion. At the same time. Yes, we're free to do whichever way we want to go. We could follow the Ninth Circuit if we wanted to, or we could follow the 1st, 2nd, 3rd, 8th and 7th and 8th and 10th if we want to. I think, though, there's some dicta that's, I don't know if it's dicta or if it's. I think the court is free to do what I don't think this issue has been presented squarely in this court. But United States v. Farias also says in so many words without without any doubt at all, it says the district court must still, after Booker, make findings by drug quantity findings or sentencing findings by a preponderance of the evidence, even where those findings contradict the jury's findings. And of course, the word contradict there is, I think that's a loose use of the word, because again, there can't be a contradiction when the district court is asking a different question from the one that the jury is answering. I also think that Watts is very. Position that there would be no way for the jury to make an actual factual finding that would hold up at sentencing. That there's no way you can phrase it so that it would be binding on the court at sentencing. I think it's well, for starters, I guess I would say we don't concede that the jury that even if there were such a that even if there were such a verdict form, and I presume there is some way to word one. But even if there were one that would make the affirmative sort of finding that Mr. Reynolds talking about, I think the Gonzalez line of cases is not applicable here. The Gonzalez 2016 case that he relies on because the Sixth Amendment, of course, a district court at trial can't say. You know, I hereby find that what the district court found beyond a reasonable doubt is wrong. I'm finding something different beyond a reasonable doubt. Obviously, that violates the defendant's right to a trial or to a jury trial at sentencing. It's different because since at least since 1949, at least since the Williams versus New York case, the district court can or a sentencing court in state courts as well under the Sixth Amendment is free to consider all manner of conduct, including acquitted conduct. That's not that's not part of the jury's that if it's what if we had a series of these and one of them said one of them had exactly what's here and then it had another one that said by a preponderance of evidence, what do you determine the quantity of the drugs to have been that he is personally responsible for? Had that as a separate interrogatory and it said below 50 for sure. If it said that, is it your position that the judge could still use acquitted, acquitted conduct, even if it has that second finding of a by preponderance of the evidence? I believe that's yeah, I believe that would be our position because I think because it's not changing the statutory range, the statutory minimum or maximum. So what the Supreme Court has talked about in Alene and Apprendi in those cases is. A element is something that a jury must decide in an element is a fact that increases the statutory range of punishment. I have the statutory minimum guidelines ranges. And then said beyond a reasonable doubt and preponderance enlisted all the guideline ranges and you check a box which one where you fit in. With the judge found then. Or is the judge never found no matter what he says? I think it's a very. It's a very difficult question and I think it's a very extreme hypothetical, but I do think our position is. And again, this case doesn't require any of any of that because of the verdict form is about a reasonable doubt, which is a different question. But yes, I do think that's our position. What is the army that the judge is never bound? Is that the government judges never bound? The judge is never bound for guidelines purposes. The judge is bound by for statutory matter what determinations the jury makes and no matter what standard they use and no matter how factually precise they are, the judge can do whatever the judge wants to do based on the PSR. If supported by the government, of course, must prove its sentencing facts by preponderance of the evidence, or sometimes when you know there are those really unusual, extraordinary cases where the tail wags the dog and there's some conceivable way that the government standard at sentencing may have to be clear and convincing evidence or the like. Because Gonzalez speaks only to the issue of whether the district court is displacing a trial verdict of guilt or innocence on a specific theory of guilt or innocence, I believe, and that that is about an element of the offense. Guidelines issues are not elements of the offense and therefore the jury. The Sixth Amendment right is about the offense and about the elements of the offense. I think there are a lot of there are strange anomalies. I want to get back to this because I frankly did not understand that we were trying to change federal courts into Texas state courts. In Texas state courts, the jury does decide the sentence. Of course, that can be waived just like juries can be waived in federal court, but the jury does decide the sentence. Absolutely. Federal court is quite different and has been, as you say, for decades. The Supreme Court has made that very clear. Where the Supreme Court has moved a little bit in the last decade or so has been on the statutory issue. When you're finding something statutory, you get a jury. But when it's a guideline, I'm not aware of any case that has said, oh, the guidelines are to be decided by the jury. That would radically change the federal courts to make them similar to the Texas courts. I'm not saying that's good or bad. I'm just saying that's a radical change. I didn't understand even Mr. Raynald to be making that argument, but that's fine. That actually makes the case easier because we clearly are not Texas courts, Texas state courts. I think 18 U.S.C. 3661 speaks to that. It says no limitation. The word no limitation can be placed on the district court's ability to a history of the defendant for sentencing purposes that may be legitimately received by the district court for sentencing purposes. We take that. There's no suggestion anywhere in the case law that I'm aware that that statute is unconstitutional. I think that statute speaks to many of these issues about how should the district court be limited? What can the district court do? Can the district court contradict? I think it can. But again, I think in this case, there's no contradiction in any event because of the two different standards of proof. The other thing I would say is there are anomalies to Mr. Raynald's position if accepted. One of them is that he would have been worse off if he'd have been acquitted of count one. So he was convicted of count one and count two drug conspiracy, money laundering conspiracy. Imagine a situation in which he was acquitted of count one. The jury said not guilty. So we're not making any factual findings about drug quantity. The district court then is totally free to decide at sentencing for purposes of count two. The underlying offense for the money laundering was, of course, the drug offense. And it would again make the same drug quantity calculations that it did. And that's yet another reason to think that this verdict form doesn't mean what Mr. Raynald suggests it means. And the other thing, too, is that if 11 jurors had thought that the appropriate quantity was what the district court thought, but one juror thought, you know what, I'm just going to throw up my hands. I have no idea what Mr. Leontoritis foresaw in this case. I know he participated in this drug conspiracy. I'm just not sure to how much. I don't know if he knew the value of these pills or whatever. I just think I'm going to just say point one gram and we're going to all check the box on the bottom because I'm going to hold out on that. That means they couldn't check any box because there would have been if it was an affirmative finding, like Mr. Raynald says, several jurors would have been in a different box. And that one juror would have been in the bottom one. So they couldn't have agreed on anything there. So again, another reason to think that this isn't an affirmative verdict form at all. It's just doing what verdict forms do. If we ruled in Mr. Raynald's favor on this question, or his client's favor in this question, how would you have to, how could you ever phrase the statutory minimum question to avoid this issue? I'm just struggling with that because you have to ask this question in order to get to your statutory minimum point. And I don't know how you're going to ask it while still putting the burden on the government without ending up in this bucket that we've got here. I think that's right. I think there would have to be something like two tracks of questions. You know, one, just the way the first and the third and the seventh and to the tenth have asked it. And that may be the case. So as Judge Graber pointed out in her dissent, I mean, there are various ways in which a verdict form can be tailored more clearly to this, you know, to the statutory ranges and to acquittal versus conviction on elements of the offense. But this is this court's, as I understand it, I mean, the district court didn't pull this out of thin air. It, you know, pulled it from the pattern instruction, you know, again, with wetting it to the unanimous finding beyond reasonable doubt. And so I don't think this was, you know, there was no reason for anybody in this case. You know, Mr. Raynall says that the government agreed to this verdict form. Of course we did, because this is, so far as we understood, the standard verdict form. And again, I point to Judge Graber's dissent. She said, you know, yeah, there are different ways in which a verdict form can be written. This one was just fine because, you know, there's never been any suggestion to the contrary. And Watts, again, points very heavily in the other direction, I would say. What is the instruction in the Ninth Circuit today? I don't know what the instruction is, Your Honor, to be honest. I don't know what it is. The verdict form, I don't know if they've changed their verdict form in response to the I mean, you don't have to, but did you want to address the other arguments in the brief? The opposing counsel didn't. So if you've got two minutes, it's up to you. Use your time as you wish. I would just very briefly, thank you, Your Honor. I would just very briefly talk about the abuse of trust. I think the acceptance of responsibility, the denial of that is the easiest issue in this case by far. The district court, it's entitled to more deference even than under a clear air trial. He disputed as to the vast majority of what he was charged with. So I think that one affirmance in our view is warranted there. The abuse of trust enhancement, just the point this just very quickly, the point is Mr. Leontoritis undersells his position significantly in his. He says in his reply brief flat out, I was just a used car dealer. He wasn't just a used car dealer. He was the owner, licensed owner and operator of a car dealership that in this case, the central car in this case was a $450,000 new car. There are particular, you'll see testimony from Mike Mize of the DMV, the Texas DMV. This is pages 1184 to 1189. He speaks at length there and in other places about the regulatory requirements in Texas for car dealers. Mr. Leontoritis was part of this regulatory scheme and people expected him to comply with the licensing regulations to which he was subject. Much as in Andrews, yes, we acknowledge Andrews is not directly on point from the Seventh Circuit, but it is a very helpful case for us. He, Mr. Leontoritis says that this isn't the same situation as there because Mr. Guillory was in cahoots. He, Leontoritis was not abusing Guillory's trust. That may be so, but there are downstream buyers who would want to know where the title was at particular times, what lien was on this car at what times. I would want to know if I were investing half a million dollars in a new car, whether a drug dealer had owned it or not. For those reasons, we think that he had a position of trust. He did abuse it and we the conspiracies in this case for the reasons we say at page 28 of our brief. If there are no further questions, we would just ask your honors to affirm. Thank you. Thank you. Mr. Renald, do you have a rebuttal? You're on mute. Is that better, Your Honor? Yes, it is. Okay, thank you. Um, the government focuses on the presence of less than language and denotes that as the common factor between all jury verdict forms. Our position is that completely misses the point. The less than language is drawn from the statute and is there to define the crime of conviction. The important part of the jury verdict form in this case is where the jury says we unanimously find beyond a reasonable doubt that the amount of I think fed a meeting question was X as opposed to simply the less than language. If we look at the verdict form in Pinheiro, this is the judge Haines's question about designing a verdict form. It's contained on pages six and seven of Mr. Leontoritis's reply brief. And it says very simply, as to count one conspiracy to distribute in this case marijuana, you can pick between the following. A guilty of conspiracy to distribute 100 kilograms or more. B guilty of conspiracy distribute 50 to 100 kilograms. C guilty of conspiracy to distribute less than 50 kilograms or not guilty. Had that question been asked in this case, I would not be standing in front of your honors making this argument. That was not the question that was asked. I also pulled up the pattern jury charge and special verdict form from the Fifth Circuit at it's page 416 of the manual, but it's 2.95 a and there what is asked of the jury is with respect to this count, the amount of mixture or substance containing a detectable amount of blank was. So it's referencing the earlier general verdict of guilty and saying to the jury in respect to the count that you found him guilty, right? What has the government proved beyond a reasonable doubt? In our case, we are asked, the jury was asked a completely different question. So this isn't the pattern jury charge? It's not what's contained in 2.95 a. So what is proposing counsel discussing when he says, well, this is just the pattern jury and we just did the right to the pattern jury. I'm sorry, it wasn't the verdict form that was used in Pinheiro. I am. I cannot stand here and tell you that it's not a pattern verdict form, but I know that it's not what's contained in 2.95 a because I'm looking at it right now. Can you address my question about how we avoid if we rule in your favor, how we avoid ending up essentially becoming Texas state courts and having juries deciding sentencing? Your Honor, you have to use the Pinheiro verdict form where they find them guilty of. No, no, I'm saying your argument is that the jury can decide the sentencing guidelines. And if we rule your way, we are ruling that even if down the road, the government asked a different question. All of the hypos that Judge Elrod asked about what if the jurors asked this, what the jurors asked that you're essentially saying the jury is getting to decide the guidelines because there's no statutory issue with this question anymore because of the finding. So the question is the guideline and you're arguing the jury decides the guidelines. How is that not putting us in Texas state court? Again, that's not disrespecting the Texas state courts in any way. I'm just saying you're putting us there or we haven't been. Your Honor, it is our position that in our federal system and according to the Constitution, when the jury has been asked a question, its verdict is binding on the court. And our position is that has always been the law. And what case says, what case in our circuit or the U.S. Supreme Court says on a sentencing guideline question, not a minimum statute or whatever, sentencing guideline question, the jury's decision rules. That case hasn't been presented to the court, but it stands to reason that if it is binding such that it would let three convicted murderers off, it should certainly apply at sentencing. I mean, that's the guilty or not guilty. I don't doubt that the jury decides that. That's fundamental. But frankly, I wouldn't have needed Booker if they were going to just have the jury decide the sentence. I mean, that really was the question that Booker was dealing with. Should juries decide the sentence? And they decided, well, I think it's better to make, you know, the sentencing guidelines discretionary and so on and so forth, and that's how they addressed it. So it would be flipping Booker, in my view, to say, well, the jury, if you ask them something, they decide the guidelines. I'm out of time. You all are going to be wanting the jury to decide a lot of stuff. You can ask a good chances question and then I have a question. Certainly, Your Honor. I think that Your Honor is addressing two separate issues. It is certainly constitutional for a judge to decide the sentence within a statutory range. We're not contesting that. What we're saying is unconstitutional is to contradict an explicit finding of fact by a jury once it's been made. Yes, Judge O'Rourke. Is the situation is if you don't want the jury to decide the sentencing guidelines, that don't ask the question of the jury in a way that answers the sentencing guidelines? Yes, Your Honor, that's exactly precisely so. In some, our social contract contained in the Constitution gives jurors authority over judges. In this case, the jury made an affirmative finding that the amount of methamphetamine in question was less than 50 grams. The district court was bound by that sentencing in accordance with the jury. Thank you, counsel. We appreciate the fine arguments on behalf of both lawyers today and you answering our questions. I know that sometimes this format can be difficult, but I think that this went swimmingly and you both accounted represented yourself and your clients well. Thank you. Thank you. This case is submitted and we will continue with the next argument. Thank you.